STATE OF NEBRASKA, APPELLEE, V. JOSEPH M. BAKER, APPELLANT.
461 N.W.2d 251

Filed September 28, 1990.   No. 89-1311.

Brian R. Watkins for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Following a bench trial, the county court adjudged defendant-appellant, Joseph M. Baker, guilty of second-offense driving while intoxicated, in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1988). That conviction was affirmed by the district court; defendant now urges that the latter court erred in failing to find that the former court erred on the record by finding the evidence sufficient to support the charge. We affirm.

At approximately 3:10 a.m. on October 23, 1988, Deputy David Pekarek of the Lancaster County sheriff's office was dispatched to investigate an accident at the intersection of 56th Street and Rokeby Road, south of Lincoln, Lancaster County, Nebraska. As he arrived at the scene, he noticed a pickup truck on the road attempting to pull a suburban vehicle from a ditch with a chain. The suburban's rear tires were spinning and throwing grass and dirt. Pekarek thereupon parked his vehicle and approached the scene on foot. By the time he arrived, the suburban had reached the roadway. In Pekarek's opinion, the suburban could not have gotten out of the ditch without the aid of the pickup.

Pekarek testified that when he arrived, the suburban's engine was running and its reverse lights were lit. After the pickup had stopped pulling, the suburban continued to move backward under its own power toward the pickup, to give more slack in the chain. The pickup also backed up to release tension in the chain. The suburban was traveling under 5 miles per hour and moved less than 5 feet under its own power. Pekarek identified

defendant, the sole occupant of the vehicle, as the person sitting behind the wheel of the suburban. When Pekarek reached the suburban, the gearshift indicator was in the reverse position, and the vehicle was held in position by defendant's application of the brakes.

Pekarek then instructed defendant to put the suburban into park, shut off the engine, and exit the vehicle. Pekarek noted that defendant smelled of alcohol and that his eyes were bloodshot and watery. As a result, Pekarek required defendant to undergo a number of field sobriety tests, all of which defendant performed poorly. Pekarek concluded defendant was under the influence of alcohol and placed him under arrest for driving while intoxicated. Defendant was then transported to Lincoln, where Pekarek administered a breath test, which showed the presence of 0.175 grams of alcohol per 210 liters of breath.

Jeffrey Rosenlof, a passenger in the pickup which pulled the suburban out of the ditch and the person who hooked the two vehicles together with the chain, watched the pulling operation from outside the pickup. Rosenlof testified that the suburban's engine was running while it was being pulled from the ditch and that the vehicle was in reverse gear. According to Rosenlof, the suburban rolled "under its own power" to release the tension in the chain once it had been extricated from the ditch. Rosenlof estimated that the suburban had backed up approximately 5 feet.

Defendant testified that he fell asleep in the suburban after eating dinner and having a "couple of beers" at a tavern. He claimed to be tired, having arisen at 4 o'clock the previous morning and having worked all day. However, on cross-examination, defendant admitted that he had been drinking during the day while working and also that he had been drinking prior to going to the tavern that evening. Defendant's first memory after falling asleep was of being awakened by a jerk on the ditchbound suburban. According to defendant, the suburban's engine was already running at this point, and he slid behind the wheel as the vehicle was being pulled. He put the suburban into reverse gear and gave the vehicle "a little gas" while it was being pulled. He claims to have

applied the brakes as soon as the suburban reached the roadway and denied having steered the vehicle. Defendant also denied having moved the suburban once it reached the roadway. Defendant said he put the suburban into parking gear and accompanied Pekarek. According to defendant, the pull chain was not disconnected from the two vehicles until he was sitting in Pekarek's vehicle.

Kenneth Kobza, a passenger in the suburban when it went into the ditch, testified that the backward movement of the suburban on the roadway as it exited the ditch was the result of the pickup's pulling the suburban and not defendant's independent operation of it.

Initially, there was some confusion about who drove the suburban into the ditch. Defendant claimed to have been the driver when first questioned about it, but a comment made by his wife, who was standing nearby at the time, prompted Pekarek to question her as well as defendant. Following that discussion, Pekarek concluded that defendant's wife had been driving when the suburban went into the ditch.

So far as is relevant to this case, § 39-669.07 provides that it shall be unlawful for one "to operate or be in the actual physical control of any motor vehicle" while "under the influence of alcoholic liquor" or while having "a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath." Defendant does not claim that he was not under the influence of alcoholic liquor or that he did not have more than the permitted amount of alcohol in his breath; rather, he claims the evidence fails to establish that he was either operating or in actual physical control of the suburban.

In *Uldrich v. State*, 162 Neb. 746, 750-51, 77 N.W.2d 305, 308 (1956), citing *Commonwealth v. Jordan*, 310 Mass. 85, 37 N.E.2d 123 (1941), this court held "operate," as that term was used in a predecessor statute, referred to the "actual physical handling of the controls of the vehicle while under the influence of intoxicating liquor." This definition has survived through the years. See, e.g., *Waite v. State*, 169 Neb. 113, 98 N.W.2d 688 (1959); *State v. Nielsen*, 199 Neb. 597, 260 N.W.2d 321 (1977), *overruled on other grounds, State v. Gerber*, 206 Neb. 75, 291

N.W.2d 403 (1980). Thus, under the provisions of § 39-669.07, it is unlawful, so far as relevant in this case, for any person to actually physically handle the controls of any motor vehicle while under the influence of alcohol or while having the prohibited amount of alcohol in one's breath.

Defendant admitted to putting the suburban into reverse and applying the gas while it was being pulled out of the ditch. There was evidence that he continued to back the vehicle under its own power after reaching the roadway, and there was evidence that defendant so backed the suburban over a distance of as much as 5 feet.

While it is true that the presence of the chain may have limited the direction and speed with which defendant could have moved the suburban, it cannot, under the circumstances, be said, as defendant suggests, that the presence of the chain somehow converted the suburban into the equivalent of a "broken down vehicle in a junkyard." Brief for appellant at 8. The evidence that defendant backed the suburban under its own power to loosen the chain is sufficient to permit a finding that the vehicle was not so converted.

The evidence supporting a finding that defendant did in fact operate the suburban while he was in a prohibited alcoholic state renders the district court judgment correct without any need to consider what is meant by the phrase "to be in the actual physical control," as used in § 39-669.07. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.